[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. The court finds that the plaintiff and the defendant, whose maiden name is Denise Duckett, were married at Ridgefield, Connecticut, on October 22, 1994. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage, and no minor children have been born to the defendant wife since the date of the marriage of the parties, and neither party has received state assistance.
The parties are in dispute regarding the issue of the breakdown of the marriage. The defendant would prefer not to have the marriage dissolved. The court finds, from the evidence presented, that the marriage has broken down irretrievably and that the primary cause of the breakdown of the marriage was the acute alcoholism of the defendant. Acute alcoholism is the use of alcohol in an addictive manner affecting a person's life professionally, personally and from a health standpoint. The defendant received treatment for her acute alcoholism at Marworth in Waverly, Pennsylvania, between June 28, 1995 and July 15, 1995.
The plaintiff's prior marriage was dissolved on August 3, 1994. A separation agreement was entered into between the plaintiff and his then wife, dated August 3, 1994, was approved CT Page 6873 by the court and incorporated by reference into the judgment file. Under the terms of the separation agreement, the plaintiff is to pay support in the monthly amount of $2192 through March 31, 1998. He also pays one-half of jointly agreed upon summer activities, summer camp, and school year extracurricular activities for the minor children. He also pays alimony for a period not to exceed August 31, 2002, in the amount of $2000 monthly. In addition, he was obligated to pay his ex-wife $30,000 as additional alimony in three annual installments with the final installment of $10,000 due on or before March 1, 1997. He is also responsible for paying two-thirds of the college expenses for the children with the cost based on the residential attendance at the University of Connecticut. The home that he owned with his ex-wife at 21 Deer Hill Drive, Ridgefield, Connecticut, was to be quitclaimed to her on or before August 31, 1994. He retained ownership of the property that was in his name only and continues to be in his name only at 132 Eleven Levels Road, Ridgefield, Connecticut. His vested pension plan at Banker's Trust was divided equally between the plaintiff and his ex-wife by QUADRO. His pension with Nat'l Westminster Bank was divided equally between the parties by QUADRO.
The plaintiff attended high school in Evanston, Illinois. He graduated from the University of Illinois with a major in finance and economics in 1973. He then attended Northwestern University where he obtained an MBA degree in 1974.
After obtaining his MBA degree in 1974, the plaintiff initially was employed for two years at a bank. He was then employed by Banker's Trust where he remained until December of 1987. During the years he was employed by Banker's Trust, he received salary increases as well as job promotions. When he terminated his employment with Banker's Trust in December of 1987, he was involved with corporate finances including merges and acquisitions. His salary in December of 1987 was $100,000 plus a bonus of $25,000 to $50,000. He also had a defined benefit pension plan that was fully vested. After leaving Banker's Trust in December of 1987, he was employed by Nat'l Westminster Bank, a British owned bank.
In 1993, the plaintiff had gross wages of $300,567. In 1994, the gross wages between the plaintiff and the defendant was $232,694. Of that amount, the defendant earned approximately $41,000 and the plaintiff earned approximately $192,000. In 1995, the plaintiff's gross wages was $284,996. CT Page 6874
In November of 1995, Fleet Bank acquired Nat'l Westminster Bank. The acquisition was completed by Fleet Bank on May 29, 1996 at which time the plaintiff as well as between 200 to 235 other people that were in his department were laid off. The plaintiff received a severance package from Nat'l Westminster Bank that amounted to being paid approximately $100,000 over an eight month period. He has remaining payments due to him from his severance package with Nat'l Westminster of $21,015 that is net of withholding with the last payment due January 29, 1997. He has a vested defined pension benefit plan with Fleet Bank with a total present lump sum value of $68,913.10. He also has a vested defined benefit plan with Banker's Trust with a total present life annuity value of between $31,877.03 and $36,272. The plaintiff's interest in the Fleet Bank pension plan and the Banker's Trust pension plan is slightly in excess of 50 percent of the total value of each plan. He has a 401 savings and investment plan that is now with Fleet Bank that formerly was with Nat'l Westminster with a present vested value of $34,465.95. After his employment with Nat'l Westminster Bank was terminated, he obtained employment again with Banker's Trust, effective May 23, 1996, as a managing director at an annual salary of $175,000. He also received, as part of his employment package with Banker's Trust, a guaranteed bonus of $65,000 less deductions. That bonus will be paid to him on or about January, 1997.
The plaintiff received a $190,000 bonus from Nat'l Westminster in 1996. One hundred fifty thousand ($150,000) dollars of it was paid the end of February of 1996, which was the bonus that he earned in 1995. The remaining $40,000 was paid in approximately May of 1996. He also received from Nat'l Westminster approximately $139,000 from his stock plan in approximately May of 1996. Since the parties separated, he has paid off approximately $75,000 in debts since they occurred during the time they were married. He has also paid $15,000 in attorney's fees.
The home that the plaintiff owns at 132 Eleven Levels Road, Ridgefield, Connecticut, was purchased by him for $425,000 prior to his dissolution of marriage. It was purchased by a $150,000 down payment from his funds together with a $275,000 first mortgage.
He is owed $4600 from Banker's Trust for business expenses for which he is entitled to reimbursement. The present fair CT Page 6875 market value of the home at 132 Eleven Levels Road, Ridgefield, Connecticut, is $450,000. It has a mortgage of $269,000 and an equity of $181,000. He owns furniture with a value of $5000. He has $10,000 in his Fleet income account and $50,000 in his Fleet checking account. His financial affidavit shows a weekly expense of $190 for a 401K plan. He does not presently have that expense. He has prepaid $10,800 on a lease that he has for a 1996 BMW. The motor vehicles that he owns with his lease equity has a total fair market value of $34,180. During the period of time the parties were married, the plaintiff purchased various antiques and silk screens.
The defendant received a college degree in the field of graphic design in 1978. She worked in her field as a graphic artist between 1978 and the date she married the plaintiff. Her highest gross annual income was approximately $41,000. In 1994, she was employed by J.P. Morgan on Wall Street in New York as a computer graphic specialist earning an annual salary of approximately $35,000. She was employed by J.P. Morgan until August or September of 1995. In September of 1995, she commenced employment with Standard Poore at an annual salary of $55,000. Her position there only lasted for nineteen days when it was terminated. She then obtained some temporary employment. She presently has two job offers and intends to accept one of them at an annual salary of $48,000. That employment is to start on or about December 20, 1996. She will have health insurance available through that employment. The cost to maintain COBRA benefits under the plaintiff's health plan for the defendant would be $190 monthly.
The defendant owns a 1986 Saab that was given to her by the plaintiff with a value of $2000 and no loan balance. She owns diamond rings and various small antiques with a value of $6000. She has bank accounts totalling $7082.71 and two shares of stock with a value of $150. She has a deferred compensation plan with a value of $873. She has liabilities totalling $11,449.
This court has considered the provision of § 46b-82
regarding the issues of alimony, and has considered the provision of § 46b-81 (c) regarding the issues of property division, and has considered the provision of § 46b-62 regarding the issues of attorney's fees. The court enters the following orders:
ORDERS
CT Page 6876 A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
C. BY WAY OF PROPERTY ORDERS
1. The plaintiff has to pay all the liabilities shown on his financial affidavit dated December 5, 1996, and hold the defendant harmless therefrom.
2. The defendant is to pay all the liabilities shown on her financial affidavit dated December 5, 1996, and hold the plaintiff harmless therefrom.
3. All assets shown on the plaintiff's financial affidavit are awarded to the plaintiff.
4. All furniture in the possession of the plaintiff is awarded to the plaintiff except for the silk screens. All of the silk screens in the possession of the plaintiff are awarded to the defendant.
5. All assets shown on the defendant's financial affidavit are awarded to the defendant. All furniture in the possession of the defendant is awarded to the defendant.
6. The plaintiff is ordered to pay to the defendant the sum of $100,000 payable as follows: (a) $30,000 by February 1, 1997; (b) $10,000 by April 1, 1997; (c) $10,000 by May 1, 1997; (d) $10,000 by June 1, 1997; (e) $10,000 by July 2, 1997; (f) $10,000 by August 1, 1997; (g) $10,000 by September 2, 1997; and (h) $10,000 by October 1, 1997.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file CT Page 6877 within thirty days and send it to counsel for the defendant for signature and filing.
2. The defendant is restored her maiden name of Denise Duckett.
Axelrod, J.